**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**BERNARD L. SMITH,**

    **Plaintiff,**

    **v.**                                  Case No. 15-9085-JAR

**JANSSEN PHARMACEUTICALS, INC., ET AL.,**

    **Defendants.**

**MEMORANDUM AND ORDER**

Pro se plaintiff Bernard L. Smith brings product liability claims against defendants Janssen Pharmaceuticals, Inc., Johnson & Johnson Company, and Janssen Research & Development, LLC, alleging the prescription drug Risperdal caused him to develop gynecomastia and galactorrhea. Janssen Pharmaceuticals is the manufacturer/distributor of Risperdal, an anti-psychotic medication, and Johnson & Johnson is the parent company of Janssen. Before the Court is Defendants' collective Motion for Summary Judgment (Doc. 67). Defendants argue Plaintiff has failed to present evidence on causation, a necessary element for his claim. For the following reasons, the Court grants Defendants' motion.

### I.     Factual Background

Plaintiff has been incarcerated in Kansas since May 16, 2005. While incarcerated, Plaintiff was treated for various mental health issues, including bipolar disorder and auditory and visual hallucinations. On February 4, 2007, Plaintiff was placed on a trial of Risperdal, which he took until he was prescribed the generic version, Risperidone, on July 6, 2008. Plaintiff then took Risperidone in varying doses until February 10, 2014, minus a two-week period he was prescribed a different drug.

Based on medical records provided by Plaintiff and Defendants, Plaintiff first complained of gynecomastia—a condition in which men experience abnormally enlarged breast tissue—and galactorrhea—a spontaneous discharge from the nipple on the breast—in a February 8, 2014 "Nursing Progress Note." Plaintiff told the reporting nurse that "he had talked to his lawyer and with the advice of his lawyer that his medical records needed to have information about the galactorrhea and gyneromastia [sic] on his inmate medical records." (SEALED Doc. 73-1 at 2.) Plaintiff complained of pain in his breast and sore and leaking nipples. *Id.* On February 10, 2014, Plaintiff had a psychiatric evaluation in which he complained of swelling and leaking breasts. (SEALED Doc. 73-2 at 2.) He told the physician "[m]y attorney said I need to get it in writing what is going on with the medication." *Id.* The reporting physician noted she recommended that Plaintiff discontinue the Risperdal prescription as it can cause galactorrhea and gynecomastia. *Id.* There is no evidence to suggest Plaintiff took Risperdal or Risperidone at any time after February 10, 2014.

According to a February 11, 2014 Nursing Progress Note, Plaintiff again reported that he was on Risperdal and developed swollen breasts and sore nipples. He told the reporting nurse "[m]y doctor on the street says I have gynecomastia and galactorrhea. I need to see someone so it can be logged. I need something, for the pain. I need you to log that this is what it is. Why come you just cant this is what going on with my body." (SEALED Doc. 73-3 at 2.) The reporting nurse noted that Plaintiff said his lawyer told him he needed a doctor to diagnose him with the condition. *Id.* Plaintiff was referred to a doctor for his alleged condition. *Id.*

Approximately two weeks after Plaintiff's Risperidone prescription was discontinued, Plaintiff again visited the prison health facilities complaining of sore and leaking breasts. (SEALED Doc. 73-5 at 2). The treating APRN noted on Plaintiff's Chart Note there was "no discharge from either breasts,

no inflammation, c/o tenderness with palpation. No abnormal enlargement noted." *Id.* at 3. Under the "Assessment Plan" the APRN noted "Inflammatory Disease of Breast (611.0), Acute." *Id.*

On June 11, 2015, Plaintiff was seen by Dr. Gordon Harrod. Dr. Harrod noted Plaintiff wanted "some documentation of gynecomastia from Risperdal therapy. . . . He tells me he has breast leaking 'constantly.' The fluid is thin white/yellow. It was worse while on the Risperdal. He is very adamant about something being in his chart about gynecomastia." (SEALED Doc. 73-4 at 2.) After his evaluation, however, Dr. Harrod rejected any diagnosis of gynecomastia:

> "Regarding is [sic] 'gynecomastia,' I see no reason to tack on that diagnosis. He speaks of a lawyer wanting something saying in the chart that he has gynecomastia. I cannot in good conscious [sic] say he has true gynecomastia. He has some muscular pectoralis muscles but I can't see any discharge or any irregularity in his breast exam."

*Id.* at 3. On August 28, 2015, Plaintiff sent correspondence to "Dr. Wade" of Corizon Health requesting "Dr. Wade" sign a sworn affidavit stating "on June, 2015, I diagnosed Mr. Bernard Smith of having a continuous prolonged physical damage called gynacomastia [sic] which was caused by taking a Drug called Respidal [sic]." (SEALED Doc. 73-6 at 2.) Mr. Wade, an APRN, returned the correspondence to Plaintiff noting "Wade, APRN, did not diagnose you with gynecomastia, nor does he feel you suffer from this condition." *Id.*

Neither party has provided any evidence showing Plaintiff was ever diagnosed with gynecomastia or galactorrhea. Nor is there any expert evidence in the record linking any symptoms Plaintiff may have suffered to either Risperdal or Risperidone.

On April 13, 2015, Plaintiff filed a petition for personal injury in the District Court of Labette County, Kansas. (Doc.1-1 at 1.) Plaintiff alleged he was injured after taking Risperdal, which caused extreme weight gain and gynecomastia. (Doc. 1-1 at 2.) Defendants removed the case to this Court based on diversity jurisdiction.

**II.     Legal Standards**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" factual dispute requires more than a mere scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party demonstrates an absence of evidence in support of an element of the case, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The nonmoving party "may not rest upon the mere allegations or denials of his pleading." *Id.*

In making the summary judgment determination, the court must view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 252.

**III.    Analysis**

Plaintiff asserts a product liability claim under Kansas law, arguing he developed gynecomastia and galactorrhea after taking Risperdal. Product liability claims in Kansas are governed by the Kansas Product Liabilities Act, K.S.A. §§ 60–3301 et seq. ("KPLA"). The KPLA "applies to all product liability claims regardless of the substantive theory of recovery." *Danaher v. Wild Oats Markets, Inc.*, 779 F. Supp. 2d 1198, 1209 (D. Kan. 2011). To prevail on a claim under the KPLA, a plaintiff must demonstrate that: "(1) his injury resulted from a condition of the product; (2) the condition was

unreasonably dangerous; and (3) the condition existed at the time the product left defendant's control." *Kernke v. The Menninger Clinic, Inc.*, 173 F. Supp. 2d 1117, 1122 (D. Kan. 2001).

The elements of a product liability claim under the KPLA "may be proven inferentially, by either direct or circumstantial evidence." *Samarah v. Danek Med., Inc.*, 70 F. Supp. 2d 1196, 1202 (D. Kan. 1999) (quoting *Mays v. Ciba–Geigy Corp.*, 233 Kan. 38, 54 (1983)). If circumstantial evidence is used, it "must tend to negate other reasonable causes, or there must be an expert opinion that the product was defective." *Id.* Thus, because product liability must be based on more than mere speculation, guess, or conjecture, "the circumstances shown must justify an inference of probability as distinguished from mere possibility." *Id.*

The threshold issue in a products liability case is whether the allegedly defective product caused the injuries asserted by plaintiff. *See id.* at 1206. "The mere fact that a person suffered injury while using a product is insufficient in itself to satisfy the requirement of proof that a defect in the product was a proximate cause of the injury." *Id.* Thus, in order to prove his case, Plaintiff must come forward with "sufficient evidence to establish that there exists a causal nexus between the injury alleged and the defect charged." *Id.*

Here, however, the Court need not even consider the issue of whether the drug Risperdal caused Plaintiff's alleged injuries. Plaintiff has failed to establish he has even suffered an injury. Based on the medical files in the record, no health care professional has diagnosed Plaintiff with gynecomastia or galactorrhea. In fact, a doctor concluded Plaintiff did not have either condition. Plaintiff has not come forward with any evidence to meet his burden to overcome summary judgment, as he has no proof—besides his subjective opinion—that he has gynecomastia or galactorrhea. Plaintiff's self-diagnosis alone is not sufficient to overcome summary judgment. *See Fry v. Al-Abduljalil*, No. 05-1179, 2006 WL 226025 at *3 (10th Cir. Jan. 31, 2006) (noting "Mr. Fry's personal

conclusions regarding his stomach problems are insufficient to demonstrate a triable issue of fact for the purpose of overcoming summary judgment."). Rather, expert opinion as to a medical diagnosis is required because "the diagnosis, care, and treatment of a patient are typically issues outside the knowledge of an average person who has not received specialized training." *Hubbard v. Mellion*, 302 P.3d 1084, 1092 (Kan. Ct. App. 2013).

Beyond the absence of an established injury, Plaintiff has also failed to establish a nexus between his complained of symptoms and his ingestion of Risperdal. Because Plaintiff has no expert opinion as to causation, any circumstantial evidence must tend to negate other reasonable causes for the alleged injury. *See Samarah*, 70 F. Supp. 2d at 1202. The record demonstrates Plaintiff was prescribed a number of other medications during his incarceration, including a generic version of Risperdal and other anti-psychotic drugs. Plaintiff provides no evidence that would exclude other medications as the cause of his alleged injury. Further, Defendants note that medical records show that Plaintiff was listed as "morbidly obese" when he saw his physician in June 2015 regarding his gynecomastia symptoms. (Doc. 63 at 4.) Defendants argue Plaintiff is unable to rule out his obesity as a cause of his symptoms. Because Plaintiff has presented no scientific evidence that would suggest his symptoms were caused by his ingestion of Risperdal, the Court finds he has not met his burden to overcome summary judgment and therefore grants Defendants' motion.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 67) is granted.

**IT IS FURTHER ORDERED** that Defendants' Motions to Strike (Doc. 65) and (Doc. 83) and Plaintiff's Motion to Consolidate Cases and Add Defendants (Doc. 85) are denied as moot.

This case is closed.

**IT IS SO ORDERED.**

Dated: <u>February 27, 2017</u>

<u> S/ Julie A. Robinson</u>
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE